THE BRISTOL MANUFACTURING COMPANY vs. WALLACE BARNES.

Hartford District, Jan. T., 1886. PARK, C. J., CARPENTER, PARDEE, LOOMIS and GRANGER, JS.

A warranty deed described certain property conveyed, being part of a larger tract belonging to the grantors, as "the horse shed on the west side of the highway, with the land covered by the same; the grantee to have the right to go on land of the grantors around the shed for the purpose of repairing the same." Held that the highway referred to as the eastern boundary was the apparent highway, and not the line of the highway as found by actual survey, and that the land conveyed was that actually covered by the shed, without reference to its situation in relation to the true line of the highway.

The question was regarded as one wholly of the construction of the language of the deed, and the provision in the deed that the grantee was to have the right to go around the land of the grantors for the purpose of making repairs, was regarded as showing clearly that the parties did not intend to convey or acquire any other land than that actually covered by the shed.

The statute (Gen. Statutes, p. 445, sec. 8,) provides that in all actions of tort brought to the Superior Court or Court of Common Pleas, if the damages found do not exceed fifty dollars, the plaintiff shall recover no more costs than damages, unless the title to land, or a right of way, or to the use of water, is in question, the value of which property is found to exceed fifty dollars. Held—

1. That the title must be so put in issue as to be settled, but that it makes no difference whether it is put in issue by the nature of the complaint or by the pleadings on the part of the defendant.

2. That as, under the Practice Act, the complaint for disseizin contains substantially the same allegations of fact as were required in the old action of disseizin, the title is put in issue by it.

3. That it is for the court and not for the jury to find the value of the property, the title of which is determined in the case.

A plaintiff in a complaint for disseizin may recover less land than he demanded.

And it is enough to bring the case within the exception of the statute if the part of the demanded premises as to which the title is put in issue is of the value required, and is so described in the pleadings or in the verdict as to be identified and to admit of valuation.

[Argued January 6th—decided January 22d, 1886.]

ACTION to recover possession of land and for damages; brought to the Court of Common Pleas of Hartford County, and tried to the jury upon a general denial before *Calhoun, J.* Verdict for the plaintiffs and appeal by the defendant for error in the rulings and charge of the court. The case is fully stated in the opinion.

*T. E. Steele* and *E. Peck*, for the appellant.

*C. E. Gross* and *J. J. Jennings*, for the appellees.

LOOMIS, J. It appears from the finding in this case that prior to January 27th, 1857, the plaintiff owned a large tract of land in the town of Bristol, situated on both sides of Main street, which runs north and south, and on that day conveyed by warranty deed to one Welch a portion of the land, namely, one lot on the east side of the street with a building used for a store standing thereon, also a horse shed with the land covered by it situated on the other side of the highway. The horse shed was removed by the grantee in the year 1870, and in 1875 the title of Welch in the land was conveyed to the defendant. The plaintiff is still the owner of all the tract first mentioned, except the portion conveyed to Welch. The deed to Welch under which the defendant claims, after describing by metes and bounds the land on the east of the highway upon which the store was situated, contains this additional description which covers the land in controversy :—" Also the horse shed on the west side of the north and south highway, westerly of said store, together with the land covered by the same;

reserving however the right and privilege of using said premises, so far as the same may be necessary, for the purpose of repairing the race-way of the grantors westerly of said shed; the grantee to have the right and privilege to go on land of grantors around said shed for the purpose of repairing the same."

There was no dispute between the parties as to the quantity of land conveyed by this deed. It was conceded that the foundation lines of the old shed, which was thirty-six feet by eighteen, indicated the precise extent of the land purchased.

The plaintiff contended that the land conveyed to Welch and now belonging to the defendant must be confined to the actual site of the old shed, while the defendant insisted that he might take other lands of the plaintiff to make his thirty-six feet by eighteen, provided it should appear from the evidence that the legal western line of the highway should be found upon actual survey to cross the land conveyed farther to the west than the front or east line of the old shed.

It appeared that the defendant, pursuant to his claim, had constructed a new building of the same size as the old shed, and had located it so that it covered a piece of land seven feet and one and a half inches wide on the north end, and five feet one and a half inches wide on the south end, and thirty-six feet long, of the adjoining land of the plaintiff not covered by the old shed, and extending over the plaintiff's race-way.

The defendant asked the court to charge the jury that the recitals and covenants in the deed were conclusive evidence against the plaintiff that the horse shed stood wholly westerly of the legal western line of the highway as it was on January 27th, 1857, and that they could render no verdict inconsistent with this conclusion, and he had previously upon the same ground objected to the plaintiff's evidence showing where the horse shed stood. The court charged the jury that the question was wholly one of fact; that they were to decide from the evidence where the old horse shed really stood, and render their verdict accordingly.

The defendant invokes the doctrine of estoppel in support of his position, but we think the question depends solely upon the construction of the deed to Welch. The controlling inquiries are—what does the description mean, and where is the land described situated? If the land is to be found wholly west of the extreme western limit of the highway, and that line is where the defendant claimed, he must prevail, not by reason of any estoppel, but simply because the deed conveyed the land in question to his grantor; but if the description locates the land wholly under the old shed, the plaintiff is right, and cannot be estopped from showing it. Both parties must accept and are equally bound by the true interpretation of the deed.

The defendant makes a mistake when, contrary to a fundamental rule of construction, he selects a single feature of the description and ignores all the rest; and the mistake is all the greater when it appears that the part selected by him is uncertain in meaning, while the part ignored is absolutely certain.

If we read the entire description it is impossible to entertain a doubt that the only land except the store property conveyed by the deed to Welch was that actually covered by the horse shed as it then stood. It would seem impossible to make the intent more certain. The deed first conveys the horse shed itself, and then adds, "together with the land *covered by the same.*" This clearly restricts the conveyance to the land lying within the exterior lines formed by the sides of the building; not an inch outside was conveyed. Then follows the special provision authorizing the grantee to go around the shed for the purpose of repairing it *on land* of the grantors; also the provision reserving to the grantors the right to enter on the premises conveyed, to repair the race-way of the grantors leading to their factory, on the east bank of which one corner of the shed stood.

If now we recur to that part of the description upon which the defendant places his whole case we shall see that there is not the slightest difficulty in giving it such a construction as to accord with all the rest of the description.

It is manifest that the main object of the deed was to convey the land on the other side of the street with the store standing thereon. This the deed first describes by metes and bounds, and then, as incidental thereto and convenient for use in connection with the store, the horse shed is referred to on the opposite side of the street, and it was most natural to refer to it as "on the west side of the north and south highway, westerly of said store." It would have been most unnatural for the parties at the time to have had in view anything more than the apparent highway, for the court finds that "at the time the deed was executed there were no fences or other thing to indicate the western boundary of any legal highway other than where the highway practically existed."

We think therefore that this language should be construed as referring to the apparent highway.

In *Falls Village Water Power Co.* v. *Tibbets*, 31 Conn., 167, it was held by this court, BUTLER, J., delivering the opinion, that "a road or highway, mentioned in a deed as a boundary, must be understood to mean what is meant by other existing objects or monuments described and intended as boundaries, namely, an object existing in fact, not of record merely—something apparent, unmistakable and permanent." And this positive rule was applied to a case where the special reasons for such an application were not nearly as strong as in the case at bar.

The remaining questions relate to the taxation of full costs by the court, which the defendant claims was not in accordance with section 8, page 445, of the General Statutes. But in addition to a verdict for one dollar damages the plaintiff recovered the seizin and possession of land which the court finds to have exceeded fifty dollars in value, and so the case would seem to come clearly within the exception of the statute.

But it is contended that the answer of the defendant, in admitting paragraph first and denying paragraphs second and third, did not put the title in issue, and therefore it does not fall within the exception. In order to do so the author-

ities establish the principle that the title must be so put in issue as to be settled. It makes no difference whether it is put in issue by the nature of the complaint or action or by the pleadings on the part of the defendant. In all the cases referred to by the defendant where it was held erroneous to tax full costs, the nature of the action did not involve proof of title, but the title only came incidentally in issue for the purpose of defeating the plaintiff's right to recover. But in the case under consideration the complaint was for disseisin, wherein it was alleged that the plaintiff owned and possessed certain real estate. This was a fundamental fact, and it was incumbent on the plaintiff to establish it as a necessary part of his case, and the defendant could not escape full costs either by denying it or by admitting it. The title to the land as alleged was necessarily settled by the verdict, and it estops the defendant from contesting it again in another action, although he should then deny the title.

At the time the statute as to costs was passed and up to the time the new procedure act went into effect, in every action of ejectment or disseisin the title was put in issue simply by pleading the general issue, and the defendant under the rules of pleading was not even allowed to plead title in himself because it amounted to the general issue. 1 Swift's Digest, side page 650. Under the new practice the complaint for disseizin contains the same allegations of fact as were required in the old action, and the title we think is put in issue by the nature of the complaint and the purposes which it serves.

But the further claim is made in the case at bar that, owing to the general description in the complaint, no issue of title was made as to any definite piece of land so accurately described as that the court could identify it for the purpose of finding its value.

This point is predicated on the fact that the plaintiff's complaint describes a large tract of land by bounding it in a general way on the highway and abutting owners, among which the defendant is named as adjoining owner. The description was true, but the land really in controversy was

a very small part of the tract described. No objection was made as to this in the court below, either on the trial to the jury or before the court on the question of costs; but on the trial the court finds that it was admitted by both parties "that the land in dispute was a piece of land seven feet one and a half inches wide on the north end and five feet one and a half inches on the south end, and thirty-six feet long, and bounded easterly on the land of the defendant, and on all other sides on lands of the plaintiff." The title to this part of the larger tract was actually put in issue, and the jury by special verdict described this part of the demanded premises, using different language, but containing such definite measurements as would make the piece of land susceptible of easy identification. It was a fundamental principle, even under the old practice, that the plaintiff might recover less land than he demanded. 1 Swift's Digest, side page 650. And surely under the less technical new procedure such a verdict is good.

It is enough to bring the case within the exception of the statute if the part of the demanded premises as to which the title is put in issue, is of the value required, and is so described, in the pleadings or in the verdict, as to be identified and to admit of valuation.

But the defendant further contends that it was for the jury and not the court to find the value. We cannot accept such a proposition. It is contrary to the universal and long continued practice in this state, and contrary to principle, inasmuch as the taxation of costs is peculiarly within the province of the court. It cannot be done until after verdict has been rendered and the jury have finished their work.

There was no error in the judgment complained of.

In this opinion the other judges concurred.